GEORGIANA J. GURNEY *vs.* JOHN A. TENNEY & others.

Middlesex.    November 24, 1916. — March 5, 1917.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Equity Jurisdiction,* To reach and apply property fraudulently conveyed and transferred. *Evidence,* Presumptions and burden of proof.

In a suit in equity to reach and apply to the payment of the principal defendant's judgment debt to the plaintiff property fraudulently conveyed and transferred to the other defendants, where the plaintiff has shown an intentional and fraudulent commingling of property of the defendant debtor with that of one of the other defendants and traces property of the defendant debtor into the confused mass, the burden of proof is upon those defendants to make the separation.

In the same case, in regard to property transferred to another of the defendants, where it appeared that a transfer of certain shares was made by the defendant debtor to this other defendant as an open preference for the purpose of securing and paying an honest debt, but it also was shown that this defendant desired to help the defendant debtor in other ways to secrete his property from the plaintiff, it was *held* that the existence of this desire was not enough to vitiate the genuine transfer for the payment of an honest debt.

Apart from statutory provisions a debtor has a right to prefer one creditor to another provided there is no secret trust for his own benefit.

In regard to still another of the defendants in the same case, it appeared that this defendant was an old lady and was annoyed by the care of property, that she conveyed certain real estate, acquired by foreclosure, in such a manner that the equity stood in the name of a conspiring defendant instead of the name of the defendant debtor, and that the old lady defendant held a second mortgage on it, but that she was ignorant of business and was solicitous of avoiding loss on her security, and a master found that she was innocent of any wrong in pursuing the dominant end of protecting herself by the means taken. All the transactions in which she participated became public immediately by the recording of instruments, and the result of the transactions did not appear to have injured the plaintiff. *Held,* that, in the face of an express finding that this defendant was innocent, it was not necessary to impute to her a fraudulent purpose as matter of law.

BILL IN EQUITY, filed in the Superior Court on February 13, 1914, and amended on March 10 and December 22, 1914, to reach and apply to the payment of a judgment for $10,000 damages and $78.75 costs, previously obtained by the plaintiff against the defendant Tenney, certain real and personal property alleged to have been conveyed and transferred fraudulently by the defendant

Tenney to the defendants Peck, Hildreth and Wallcut as more fully stated in the opinion.

The case was referred to a master, who filed a report in which he made the findings that are stated in the opinion. Later the case was heard, upon exceptions to the master's report, by *Sanderson,* J., who made an interlocutory decree overruling the exceptions and ordering that the report be confirmed. This was followed by a final decree. The plaintiff and the defendants Tenney and Peck appealed from both decrees.

*F. W. Dallinger,* (*H. N. Stearns & J. L. Dyer* with him,) for the plaintiff.

*W. H. Thorpe,* for the defendants Tenney and Peck.

*P. A. Atherton,* for the defendant Hildreth.

RUGG, C. J. The plaintiff, a judgment creditor of the defendant Tenney, seeks by this suit to reach and apply property alleged to have been conveyed and transferred by him to the other defendants in fraud of his creditors. The master's findings are ample and conclusive to the effect that Tenney and Peck attempted to conceal the former's property, so that it could not be reached to satisfy the plaintiff's debt, by means of devious devices, so that a large part of it should stand in Miss Peck's name. To this end bank accounts were changed, funds were intentionally commingled, shares of stock transferred, and conveyances of real estate made. It is not necessary to review the facts found by him in detail. A careful examination of the main and subsidiary findings makes plain the correctness of his general conclusion. The intermingling of funds was long continued and manifestly for the purpose of obscuring the truth about the ownership of the property. Miss Peck was unable to trace her own property or separate it from that of Tenney. Where there has been a fraudulent confusion of property and the plaintiff traces that of his debtor into the mass, then the burden of proof rests upon the defendant to make the separation. Fraudulent confusion of the debtor's property with that of another in one fund does not defeat the equitable right of a plaintiff, but converts the claim of the party injured into a priority of right upon the commingled fund in favor of the injured creditor. See *National Bank* v. *Insurance Co.* 104 U. S. 54, 67; *Peters* v. *Bain,* 133 U. S. 670, 693; and *Frith* v. *Cartland,* 2 Hem. & M. 417, 420.

The rights and liability of the defendant Wallcut centre about stock standing in her name in the Reece Buttonhole Machine Company. Certain of these shares originally were bought with her money and about these no contention can be made. Other shares were transferred to her in payment of a loan made by her to Tenney, upon which, (except for small payments for the express purpose of removing the bar of the statute of limitations,) nothing had been paid for so long a time that the statute of limitations might have been interposed successfully as a defence to any action brought upon it. The master finds that the transfer of these shares was made for the purpose of protecting Miss Wallcut against loss and to prefer her as a creditor of the plaintiff. A debtor has a right at common law to prefer one creditor to another provided there is no secret trust for the benefit of the debtor. *Lyon* v. *Wallace,* 221 Mass. 351. There is no secret trust in the case at bar. The fact that in other respects Miss Wallcut desired to help and did aid Tenney to secrete his property from the plaintiff, is not enough to vitiate this genuine transfer for the payment of an honest debt.

The facts respecting the defendant Hildreth in brief are that, before Tenney conceived and put in operation his systematic attempt to conceal his property and earnings in order to avoid the payment of the plaintiff's judgment, she had lent Tenney $2,000 and as security had taken in good faith a mortgage upon real estate. After the plaintiff recovered her original verdict against Tenney, he induced Miss Hildreth to foreclose her mortgage. She took and held the title to the real estate for some time, receiving rent therefor from Tenney. She was obliged to make a payment upon a prior mortgage. Being an old lady and annoyed by the care of the property, at her insistence a change was made. She conveyed the property to Miss Peck, a new first mortgage was given to a bank and a new second mortgage was given to her. The net result of all these transactions is that there is now less incumbrance upon the real estate, the equity in which, although standing in the name of Miss Peck, is the property of Tenney, than there was at the outset. The master finds that Miss Hildreth intended "both to protect her loan and to help Dr. Tenney, Miss Peck and Miss Wallcut in so far as she could," that "She had no extended knowledge of business matters and did not clearly understand her rights

under the mortgage," and that she "at no time had any intention of conspiring or agreeing with any of the other defendants to injure the plaintiff or to assist Dr. Tenney in concealing his property from her. She did intend to protect her loan, and, in so far as it seemed to her right, to provide Dr. Tenney, Miss Peck and Miss Wallcut with a home. . . . The allegation that she conspired with Dr. Tenney to help him conceal his property from his creditors is not sustained by the evidence, and . . . she has done nothing at any time that was not primarily intended to protect her loan to Dr. Tenney." These findings do not go quite far enough to charge her with participation in the fraudulent purpose of Dr. Tenney. His own vicious design does not affect her unless she consciously assisted him in it. Her conduct came near to putting her in a perilous position. But she had an honest note and mortgage. She was advanced in years, ignorant of business and solicitous of avoiding loss on her security. The master finds that she was innocent of any wrong in pursuing the dominant end of protecting herself by the means taken. That is not an impossible state of affairs. The several facts found are not inconsistent with each other nor incompatible with a regnant purpose on her part merely to guard her own interests without participating in the fraud of the other defendants. All transactions in which she participated immediately became public by the record of instruments. The result of them all does not appear to have injured the plaintiff. Under these circumstances it is not necessary to impute to her a fraudulent purpose as matter of law, in the face of an express finding that she was guiltless.

The decree may be affirmed with costs against the defendants Tenney and Peck, and with costs in favor of the defendant Hildreth against the plaintiff.

*So ordered.*