## In re KAUFMAN.

(District Court, W. D. Kentucky. June 1, 1910.)

1. ATTORNEY AND CLIENT (§ 20*)—CREDITORS—BANKRUPT'S ATTORNEY—QUALIFICATIONS.

　　While judicial policy discourages the practice of attorneys at law acting as attorneys at the same time for the bankrupt and his creditors, there is no statutory provision forbidding a creditor to employ as his attorney the attorney who has acted as attorney for the bankrupt in the preparation of his consent to an adjudication.

　　[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 27, 29; Dec. Dig. § 20.*]

2. BANKRUPTCY (§ 123*)—ATTORNEYS—APPOINTMENT—EFFECT.

　　Where, by want of proper advice, creditors named as their agent and attorney a person who had acted for the bankrupt, and whom mere judicial policy discourages from acting for them, the creditors should not,

for that reason alone, be denied the right to a voice in the selection of a trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 123.*]

**8.** BANKRUPTCY (§ 125*)—ELECTION OF TRUSTEE—RIGHT TO VOTE—"CREDITORS PRESENT."

At the first meeting of creditors, the majority creditors were represented by an attorney who had represented the bankrupt in the preparation of his consent to an adjudication, and voted for one person for trustee, and the minority creditors voted for another. *Held*, that a ruling that the majority creditors were not present for the purpose of voting, because their attorney was disqualified to represent them, but were present for the purpose of being counted in determining whether the person voted for by the minority creditors had received the votes of a majority in number and value of the creditors present, was erroneous, since creditors are not to be counted as present merely because their claims have been allowed, but must attend in person or by duly authorized agent or attorney, and those creditors who do so attend constitute the meeting, whether they constitute a majority in number and value of the claims allowed or not.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 125.*]

**4.** BANKRUPTCY (§ 127*)—TRUSTEE—ELECTION.

Where a referee in bankruptcy determined that the majority creditors were not represented by a qualified attorney, but that the person voted for by the minority had not received the vote of the majority of the creditors present, it was error for the referee to appoint a trustee of his own selection; but he should have continued the election to determine the true facts as to the qualification of the attorney, and to permit the creditors to appear by a new attorney or agent, if necessary, and then participate in the election of a trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 127.*]

**5.** BANKRUPTCY (§ 123*)—APPEARANCE BY CREDITORS—POWERS OF ATTORNEY—VALIDITY.

Powers of attorney, executed by creditors of a bankrupt to the attorney who had represented the bankrupt in preparing his consent to the adjudication, were not for that reason void per se, but were, at most, voidable under circumstances the existence of which could not be presumed.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 123.*]

In the matter of David Z. Kaufman, bankrupt. On petition to review a referee's appointment of a trustee. Reversed, and proceeding remanded.

Gifford & Steinfeld, for petitioners.

E. M. Louis, opposed.

EVANS, District Judge. The referee presided at the first meeting of creditors. A great many claims had been proved against the bankrupt and allowed by the referee. Certain creditors, who composed what we shall call the "minority creditors," were represented by attorneys who cast all their votes for a person for trustee whom they had put in nomination for that position. Certain other creditors, whom we shall call the "majority creditors," were represented by an attorney who was or had been attorney for the bankrupt in this involuntary proceeding, and who had filed the consent of the bankrupt to the adjudication. Upon that ground, orally presented at the meeting, the minority creditors objected to the majority creditors voting through

that attorney. For some reason, which does not appear on the record, the majority creditors, through that attorney, also objected to the minority creditors voting; but this objection was overruled.

The first meeting of creditors is one peculiarly under their own control, and every general creditor whose claim has been allowed is entitled to vote, either in person or by duly authorized agent or attorney. This right should not be lightly disregarded. There is no statutory provision, either in the bankruptcy act or elsewhere, which forbids a creditor to have as his attorney or agent the person who had acted as attorney for the bankrupt in the preparation of his consent to an adjudication; but judicial policy greatly discourages a practice of attorneys at law acting as attorneys at the same time both for the bankrupt and for his creditors, because such a practice might lead to conduct and results which should be strongly condemned. If, however, by want of proper advice, creditors exercise their right to name and do name as their agent to act for them a person whom mere judicial policy discourages from so doing, the creditors should not, for that reason alone, be absolutely denied the right to a voice in the selection of a trustee. Here the majority creditors in fact voted through their attorney for one person for trustee, and the minority creditors voted for another. When the referee passed upon the objections, he held that the majority creditors could not be represented by the attorney they had named. He did so upon the ground indicated, and thereupon excluded their votes. Those creditors were not in fact present at the meeting, and were not otherwise represented thereat.

But the referee held that the majority creditors, though not permitted to be represented by the attorney of their choice, nevertheless had to be taken into the estimate when it came to be determined whether the person voted for by the minority creditors had received the votes of a majority in number and value of the creditors who were present and whose claims had been allowed. In thus ruling he must have regarded the majority creditors as being present for the count, but not present for the voting. The result was that he declared that there had been no election, and himself appointed another person as trustee. This result is not maintainable upon any ground. If the majority were present at all, they were present for all purposes. If they were not present, then the minority creditors who were present had the right to conduct the meeting, and as their candidate did receive the votes of the majority in number and value of the creditors present, the referee was without power to disregard that result, and especially was he without the power to disregard it upon the grounds upon which he acted. The creditors are not to be counted as present simply because their claims have been allowed. In order to be present they must attend in person or by duly authorized agent or attorney, and those creditors who do so attend constitute the meeting, whether they constitute a majority in number and value of the claims allowed or not. Loveland, § 106.

While the referee may, for good cause, but not arbitrarily, disapprove a person whom the creditors elect as a trustee, he must do that thing expressly, and not merely by holding that there had been no

election, so that his ruling in that regard may be reviewed, if any creditor so petitions. The minority creditors have sought a review of the referee's order, but the majority have not done so.

We should by no means approve a practice which would permit an attorney to act at the same time for a bankrupt and for the bankrupt's creditors, and especially at the first meeting of creditors. Such disapproval would be much emphasized if the creditors, in making their selection of an agent, were influenced by the bankrupt himself and in his interest. But the relation of attorney for the bankrupt may have ceased in this case with the filing of the consent to the adjudication, or the creditors may have appointed their attorney and agent entirely upon their own desire and without any thought or suggestion of the interest of the bankrupt. These matters could hardly be fairly settled upon the mere oral suggestion at the meeting of the fact that the same man was the attorney who had appeared for the bankrupt, and who now appeared for the creditors. The creditors did not do an unlawful thing, but they did a thing which, under circumstances such as we have indicated, might meet with judicial disapproval. But those circumstances ought first to be inquired into, before they could be the basis of a fair decision.

Upon consideration of the matter, and upon reading such authorities as In re Kimball (D. C.) 100 Fed. 777, In re Cooper (D. C.) 135 Fed. 196, In re Columbia Iron Works (D. C.) 142 Fed. 234, and Loveland, § 41a, we have reached the conclusion that the proper practice in such contingencies as arose in this case would be to postpone an election for a day or two in order to get at the exact facts, instead of assuming anything to be true upon the mere fact alone that the same person appeared to be the attorney both for the bankrupt and for creditors. Peradventure his relations with the bankrupt may have ceased when the consent was filed. Prompt inquiry would develop the real facts, and, if necessary, the creditors might be given an opportunity to authorize a new agent. The attainment of a fair expression of the wishes of the creditors as to the control and management of a business which became theirs when the adjudication was made is abundantly worth the short time it will take to get it. The majority creditors have not petitioned for a review, and it has been a matter of some concern to ascertain and definitely fix the course which the referee should be directed to pursue after the unavoidable reversal of his action in disregarding the votes of the creditors and himself appointing a trustee.

While, on the one hand, the action of the referee was unauthorized, on the other, the minority creditors could not rightly elect a trustee if the majority had the lawful right to vote at the meeting through the attorney they empowered to vote for them. To direct the recognition of the election of the candidate voted for by the minority would ratify what I regard as a wrong to the majority creditors, because, in my view, their right to vote was not destroyed, even if they did make selection of a person as agent who ought not to have accepted the appointment—a question, however, which was largely between the court and one of its attorneys. Whether he ought to have accepted or not may have been a matter of ethics; but, as he did accept, and as the statute does not forbid his doing so, the creditors should not have

been disfranchised, unless, after fair inquiry into the facts upon proper notice, their powers of attorney were held not to confer a proper agency upon their choice. To hold otherwise might deny the rights of the majority creditors upon no ground except that their agent possibly did not have a nice sense of the proprieties of the situation. In short, we hold that such powers of attorney are not void per se. They at most are only voidable under certain circumstances, the existence of which cannot be assumed, but must be shown.

With reference to future cases, as well as this, we think the better course is to set aside the orders made by the referee on the 11th day of May, 1910, and to send the matter back to him, with directions to call, upon 10 days' notice, another meeting of creditors, to be held on the 13th instant, for the purpose of electing a trustee, and for such other matters as may be brought before it. True, there may be some inconvenience in this; but it is unavoidable, because of the error of the referee and the petition for a review of his order.

The referee's orders of May 11, 1910, are reversed and set aside, and upon the return of the case he will be directed to proceed in accordance with the views expressed in this opinion.